## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED<br>   TRADES INDUSTRY PENSION FUND<br>TIM D. MAITLAND, in his official capacity as a fiduciary,<br>FINISHING TRADES INSTITUTE<br>   F/K/A INTERNATIONAL UNION OF PAINTERS<br>   AND ALLIED TRADES JOINT APPRENTICESHIP<br>   AND TRAINING FUND, and<br>PAINTERS AND ALLIED TRADES LABOR<br>   MANAGEMENT COOPERATION INITIATIVE<br>7234 Parkway Drive<br>Hanover, MD 21076 | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| NILES INDUSTRIAL COATINGS, LLC<br>201 S. Alloy Drive<br>Fenton, MI 40480 | ) ) ) ) | |
| and | ) ) | |
| NILES PLANT SERVICES, LLC<br>201 S. Alloy Drive<br>Fenton, MI 40480 | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C.

§§185(a), 1132, and 1145, and/or 28 U.S.C. §1331.  The claims asserted are all made under

federal statutes or federal common law, but the supplemental jurisdiction of the Court under 28

U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.      A copy of this Complaint is being served on the Secretary of Labor and the

Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C.

§1132(h) .

### VENUE

3.      Venue lies in the District of Maryland under 29 U.S.C. §1132(e)(2), 29 U.S.C.

§185(a), and/or 28 U.S.C. §1391(b).

### PARTIES

4.      Plaintiff International Painters and Allied Trades Industry Pension Fund ("Fund"

or "Pension Fund") is a trust fund established under 29 U.S.C. §186(c)(5).  Its Trustees are the

"named fiduciary," "plan administrator," and "plan sponsor," and each is an individual

"fiduciary" within the meaning of 29 U.S.C. §§1002(16), (21), and 1102(a), for the International

Painters and Allied Trades Industry Pension Plan ("Pension Plan").

5.      The Pension Plan is a "multiemployer plan," "employee benefit plan," and

"employee benefit pension plan" within the meaning of 29 U.S.C. §1002(2), (3), and (37), which

is administered and has its principal place of business in this district at the address for the Fund

in the caption of this Complaint.  The Pension Plan is also known as and referred to as IUPAT

Industry Pension in the collective bargaining agreement ("Labor Contract") upon which this

Complaint is based.

6.      Plaintiff, Tim D. Maitland ("Maitland" and, together with the Pension Fund,

"Plaintiffs"), is a fiduciary of the Fund within the meaning of 29 U.S.C. §1002(21), with respect

to collection of contributions due the Fund and related matters. Maitland has a business address as

2

743564_3

listed in the caption and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as organizations.

7.     The Fund and Maitland are authorized collection fiduciary(ies) and agent(s) for:

(a)     the Pension Plan,

(b)     the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), and

(c)     the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI").

8.     FTI is a trust fund established under 29 U.S.C. §186(c)(5), and a "multiemployer plan," "employee benefit plan," and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3).   The FTI maintains its principal place of business and is administered from an office in this district.

9.     The LMCI is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

10.     The Fund and Maitland, in their capacity as authorized collection fiduciary(ies) and agent(s), sue on behalf of the Pension Plan, FTI, and LMCI.

11.     The Fund, Pension Plan, FTI, and LMCI, are jointly or severally referred to as the "ERISA Funds" or "Funds" throughout this Complaint.

12.     Defendant, Niles Industrial Coatings, LLC ("NIC") is a limited liability company and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6), and (7); 1002(5), (11), and (12), with a business office at the address listed in the caption.

13.     Defendant, Niles Plant Services, LLC ("NPS" and, together with NIC,

3

"Company"), is a limited liability company and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6), and (7); 1002(5), (11), and (12), with a business office at the address listed in the caption.

14.     Both NIC and NPS are owned and controlled by Ryan Niles and are thus under "common control" and treated as a single employer within the meaning of Section 4001(b) of ERISA.  *See* Ex. 4, pg. 1 (stipulation of Ryan Niles that he is a majority owner of NIC and NPS) and Ex. 6 (corporate filings of both NIC and NPS).

15.     Both NIC and NPS share a common address.  *See* Ex. 6

16.     On or about May 14, 2018, a final and binding grievance award ("Award") from the Local Union 1803 Joint Trade Board ("JTB") determined that NIC and NPS are a single employer operating within the same industry and geographical jurisdiction, sharing the same management, equipment, and employees.

17.     The Award was never appealed.  Accordingly, NIC and NPS are deemed to be a single employer under relevant labor law.

18.     Company does business with the Funds sufficient to create personal jurisdiction over the Company in this district, and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

19.     At all times relevant to this action, Company was party to, or agreed to abide by the terms and conditions of one or more Labor Contracts with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the local labor unions, district councils and International being referred to jointly as

4

"Union").  A true and correct copy of the relevant portions of the Labor Contract is attached as Exhibit 1.

20.     Company also agreed to abide by the terms of the Funds' Agreement and Declaration of Trust ("Trust Agreement") and the Pension Plan.  A true and correct copy of the Trust Agreement is attached as Exhibit 2.  A true and correct copy of the relevant portions of the Pension Plan is attached as Exhibit 3.

21.     Under the Labor Contract, Trust Agreement, and Pension Plan, Company agreed:

(a)     To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 1, Appendix ¶1, pp. 24-25; Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)     To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 1, Appendix ¶1, pp. 24-25; Ex. 2, p. 16 (Art.VI, § 5).

(c)     To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 1, Appendix ¶3, p. 25; Ex. 2, p.16 (Art.VI, § 6).

(d)     To pay liquidated damages, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 1, Appendix ¶4, pp. 25-26; Ex. 2, pp. 15-16 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.11.

5

22.     Article XII of the Labor Contract (entitled, "Dispute Resolution") permits a local union or district council to bring grievances to the JTB for adjudication.  Decisions of the JTB are final and binding.  *See* Ex. 1, Art. XII, Sec. 7.

23.     On or about April 4, 2018, IUPAT District Council 1M ("DC1M") brought a grievance against NIC for violating the Labor Contract by using NPS, a commonly owned entity performing the same work, within the same jurisdiction, with the same employees, and operating out of the same location as NIC, to perform covered work.

24.     On or about May 2, 2018, the JTB was convened to hear DC1M's grievance and heard evidence that NIC was using NPS to perform work at its Bay City, MI yard in violation of the "Preservation of Work" provisions of the Labor Contract. A true and correct copy of the minutes of the JTB meeting is attached as Exhibit 4.

25.     Following the aforesaid May 2nd hearing, the JTB issued the Award (*see* ¶ 16, *supra*), holding that NIC and NPC are a single employer and finding that NIC and NPC are commonly owned entities performing the same work, within the same jurisdiction, with the same employees, operating out of the same location, in violation of the terms and conditions of the Labor Contract, and ordered, *inter alia*, audits of both NIC and NPS.  A true and correct copy of the Award is attached as Exhibit 5.

26.     The Award was never appealed.

27.     In accord with the Award, and pursuant to their independent right to audit the payroll books and records of all contributing employers and affiliated entities whose employees are not concededly covered by the Labor Contract pursuant to their duty to identify all potential plan participants and to confirm all amounts due from contributing employers, the Funds directed

their auditors to schedule an audit of the Company's payroll books and records.

28.     NIC eventually responded to the Funds' audit demand by producing certain of the materials requested by the Funds' auditors, and an audit of NIC is ongoing.  To date, however, NPS has failed or refused to provide any requested documentation, and the audit of NPS' books and records has not been performed.

## COUNT I - AUDIT

### PLAINTIFFS
### v.
### COMPANY

29.     The allegations of Paragraphs 1 through 28 are incorporated by reference as if fully restated.

30.     The contributions that the Company, for NIC and/or NPS, are required to pay to the Funds are based upon hours worked and paid to employees performing work covered by the Labor Contracts.

31.     The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

32.     Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

33.     Between August 2, 2019 and October 9, 2019, the auditor for the Funds made repeated requests of Eric Hotchkiss, an officer of Company, and Brenda Chandler at the

Company to arrange a field audit and/or obtain required documents.

34.     To date, NPS has declined to provide the requested information and no audit of NPS' books and records has been performed despite demands to NPS.

35.     Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds, and applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

36.     In addition, the Fund is authorized by the Labor Contract to enforce the decision of the JTB to the extent it affects the Funds.  *See* Ex. 1, Art. XXII, §.3.

37.     The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a right and a duty to audit so to identify all potential plan participants and to confirm amounts due from all contributing employers.

38.     The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enjoin NPS, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)     Order the Company or NPS individually to pay for an audit by a Certified Public Accountant chosen by the Funds, and

743564_3

(3)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

**ERISA FUNDS**
**v.**
**COMPANY**

39.     The allegations of Paragraphs 1 through 38 are incorporated by reference as if fully restated.

40.     On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

41.     The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     After an audit of NIC and NPS, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit(s), together with interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. §1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

### COUNT III - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

**PLAINTIFFS**
**v.**
**COMPANY**

42.     The allegations of Paragraphs 1 through 41 are incorporated by reference as if fully restated.

43.     Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

                                        Respectfully submitted,

March 6, 2020                           /s/ Judith Sznyter
Date                                    Judith Sznyter (Bar No. 29743)
                                        Jennings Sigmond, P.C.
                                        1835 Market Street, Suite 2800
                                        Philadelphia, PA 19103
                                        Phone: (215) 351-0641
                                        Fax: (215) 922-3524

743564_3

Michael J. DelTergo*
Jennings Sigmond, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: (215) 351-0617
Fax: (215) 922-3524

Attorneys for Plaintiffs


*Application for *Pro Hac Vice* Admission of Michael J. DelTergo shall be made at the appropriate time.

11

743564_3